By the Court.
 

 On December 30, 1920, Albracht subscribed for 50 shares of 7 per cent, preferred stock of the Glass Coating Company, each share of a par value of $100. Nine other persons also subscribed therefor, it being agreed that the subscriptions were to be binding upon them when an aggregate of $70,000 of subscriptions had been secured. This total amount was secured and more. Albracht’s subscription of $5,000 was later reduced by partial payments to a balance of $3,000, which was admittedly due the Glass Coating Company by Albracht.
 

 In the fall of 1922, because of financial distress and the necessity of additional capital, a new corporation, the plaintiff in error, was organized, which obtained a transfer of all of the assets of the Glass Coating Company, including the transfer of the unpaid subscription of Albracht, amounting
 
 *425
 
 to said sum of $3,000. This suit was brought by the assignee, the Glaseóte Company, wherein it sought to recover from Albracht the unpaid balance on his subscription. The assignment to plaintiff in error was made on October 1, 1922. The defense of Albracht to the suit alleged that on January 1, 1923, he entered into an agreement with the Glaseóte Company, by which it agreed to release him from his obligation to pay his stock subscription balance on condition that he should purchase and pay for $3,000 par value of certain second mortgage bonds issued by the Glaseóte Company; that on the last date mentioned he executed a note to plaintiff for the purchase of said bonds, for the sum of $3,000, payable in six months, and that this note was fully paid in the following July. This note contained the following memorandum:
 

 “For old account. The Glaseóte Company agrees to turn over $3,000 of second mortgage bonds of the new corporation upon payment hereof.”
 

 The defendant, assuming the burden of proof, placed Albracht on the stand and rested. Thereupon the plaintiff moved for a directed verdict at the close of Albracht’s evidence, and renewed its motion for directed verdict at the close of the entire evidence. Yerdict and judgment in the trial court were in favor of the defendant, Albracht, and the judgment was affirmed by the Court of Appeals. From the latter judgment error is prosecuted to this court.
 

 On the trial, Albracht testified that the Glaseóte Company’s finances were in bad shape and its business apt to be closed at any moment by threatening creditors; that the plan of financing con
 
 *426
 
 templated an issue of first mortgage bonds to be used to take care of the existing corporate debts, and for a further issue of second mortgage bonds, to be secured by subscription, the proceeds whereof were to be used for continued operation of the company’s business. In testifying to the raising of the $50,000 from subscribers for the second mortgage bonds, Albracht said:
 

 “As I understood it, it was to be all new money.” In an endeavor to obtain these subscriptions for “new money,” to be secured by sale of its second mortgage bonds, the president of the Glaseóte Company first attempted to secure from Albracht a subscription therefor, amounting to the sum of $6,000. Albracht would not consent to subscribe for so large a sum, but did agree to take $3,000. Albracht’s contention is that he would be willing to help the refinancing of the new company by buying $3,000 of the second mortgage bonds, providing the president of the company would release him from payment of the $3,000 that he owed the company for the unpaid subscription for said shares of preferred stock.
 

 The position of Albracht is wholly untenable. Admittedly, he owed $3,000 on his stock subscription. Such being the case, Albracht by buying the second mortgage bonds for the above sum would contribute nothing towards the refinancing plan, would provide no “new money,” which he testified was to be secured for such financing, and would furnish no new or additional consideration for the release of his stock subscription. That is to say, under Albracht’s version of the transaction, the Glaseóte Company would be placed in the
 
 *427
 
 position of releasing him from the payment of $3,000 by transferring to him property, when there was no necessity for so doing to secure collection of his subscription for that amount, which was admittedly due the Glaseóte Company. Moreover, it appears that, at the time these negotiations were had relating to the purchase of the bonds, Albracht’s stock subscription, or the balance remaining due thereon, had been assigned by the Glaseóte Company, and was in the hands of a pledgee as collateral for a loan.
 

 It is the opinion of this court that upon the testimony of Albracht, taken in connection with the admitted and undisputed circumstances surrounding the transaction, the trial court should have directed a verdict in favor of the plaintiff in error.
 

 The judgments of the lower courts will be reversed and judgment rendered in this court in favor of plaintiff in error.
 

 Judgment reversed.
 

 Marshall, C. J., Day, Allen, Kinkade, Robinson, Jones and Matthias, JJ., concur.